IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–02336–KMT

CARRIE V. REID,

    Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of the Social Security Administration,

    Defendant.

# ORDER

This case comes before the court on review of the Commissioner's denial of Plaintiff-Claimant Carrie Reid's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

Claimant applied for DIB and SSI benefits in 2010 (*see* Doc. No. 10, Social Security Administrative Record ["AR"] at 111, 426), alleging that she had been disabled by a range of impairments, including post-traumatic stress disorder, depression, high blood pressure, obesity, and sleep apnea (AR at 375). The Commissioner denied both applications. (AR at 111, 256, 261.) Following hearings in May of 2012 and November of 2012, the Administrative Law Judge ("ALJ") determined that Claimant was not disabled within the meaning of section 1614(a)(3)(A) of the Act. (AR at 127.) The Appeals Council denied Claimant's request for review (AR at 1),

making the ALJ's determination the final decision of the Commissioner for purposes of judicial review.  *See* 20 C.F.R. §§ 404.981, 422.210(a).  Claimant timely sought review by the Court.

## STATUTORY AND REGULATORY BACKGROUND

Titles II and XVI of the Act award Social Security benefits to claimants who meet certain eligibility requirements.  42 U.S.C. §§ 423, 1382.  To receive either DIB or SSI, a claimant must be disabled.  42 U.S.C. §§ 1382(a), 423(a).  The Social Security Commissioner has established a five-step sequential process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who works is not disabled, regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe" impairment significantly limits the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or "equals" in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must determine whether the claimant can still perform any past work despite his or her limitations.

5. If the claimant no longer retains the ability to perform past work, then the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy despite the claimant's limitations.

*See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  After that, the burden shifts to the Commissioner to prove that, despite the claimant's impairments, he or she is still capable of performing substantial, gainful work in the national economy.  *Id.*  If at any point the Commissioner conclusively finds that the claimant is or is not disabled during the five-step

review process, the analysis ends.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

## STANDARD OF REVIEW

Review of the Commissioner's disability decision by this court is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  An ALJ's failure to apply the correct legal standard constitutes an independent and sufficient basis for the Court to reverse the ALJ's decision.  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  Likewise, an ALJ's failure to supply the Court with a sufficient basis to determine that the ALJ followed appropriate legal principles is also grounds for reversal.  *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (citations omitted).

## ANALYSIS

Claimant alleges the ALJ erred in four ways.  First, she alleges error with the ALJ's determination that Claimant's alcohol abuse precludes a finding of disability.  (*See* Doc. No. 13 [Opening Br.] at 23–26, filed April 13, 2015.)  Second, she claims that the ALJ failed to consider as part of his RFC analysis the effects of Claimant's morbid obesity.  (*See id.* at 26–28.)  Third, Claimant argues that the ALJ's RFC analysis did not properly account for Claimant's neuropathy in her hands.  (*See id.* at 28–30.)  Finally, she believes that the ALJ did not meet the Commissioner's burden at step-five of the disability determination.  (*See id.* at 30–32.)

**1. The ALJ's Finding that Claimant's Alcohol Abuse Precluded a Finding of Disability**

The ALJ found that Claimant's alcohol abuse legally precluded a finding of disability, because Claimant's alcohol abuse would be a contributing factor to the disability decision. (AR at 127.) Claimant contends that this finding misconstrues the law and is not supported by substantial evidence. (*See* Opening Br. at 23–26.)

A finding is supported by substantial evidence if it is supported by "more than a scintilla, but less than a preponderance" of evidence. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988) (quoting *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987)). Evidence is insubstantial when it is "overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court may not "reweigh the evidence" or "substitute its judgment" for that of the Commissioner. *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987). So long as there is substantial evidence to support the ALJ's decision, the decision must stand, even if the Court would have reached a different result. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

A claimant cannot qualify as "disabled" if the ALJ finds that the claimant's alcohol abuse is "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).[1] To determine whether alcoholism is a contributing factor to the disability determination, the ALJ asks whether the claimant would still qualify as disabled absent the claimant's continued alcohol abuse. *Id.*; 20 C.F.R. § 404.1535(a). If the answer is yes, then the alcoholism is not a contributing factor, and the alcoholism does not stop the ALJ

---

[1] Even if alcohol is a contributing factor, a claimant can still qualify if the claimant is at least 55 years old and blind. 42 U.S.C. § 423(d)(2)(C). Here, Claimant is in her thirties and is not blind. (*See* Opening Br. at 7; AR at 375 [listing disabling impairments, but not listing blindness].)

from finding that the claimant is disabled.  *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535(a).  If no, then alcoholism is a contributing factor and the ALJ must find the claimant is not disabled, at least not for the purpose of collecting DIB or SSI benefits.  *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535(a).

Disentangling the effects of mental impairments from the effects of alcoholism and substance abuse is not always an easy task.  The Commissioner issued guidance to assist:

> The most useful evidence that might be obtained in such cases is that relating to a period when the individual was not using drugs/alcohol.  Of course, when evaluating this type of evidence consideration must be given to the length of the period of abstinence, how recently it occurred, and whether there may have been any increase in the limitations and restrictions imposed by the other mental impairments since the last period of abstinence.

*Salazar v. Barnhart*, 468 F.3d 615, 623 (10th Cir. 2006).  If, after a thorough analysis, the ALJ still cannot disentangle the claimant's mental impairments from the effects of alcohol abuse, then the ALJ must find that alcohol abuse is not a contributing factor.  *Id.*

Here, the ALJ reasonably concluded from the evidence and the law that Claimant's alcohol abuse precluded a finding that she was disabled within the meaning of the Act.  During step three of the disability determination, the ALJ found that, with her alcohol abuse, Claimant's impairments medically equaled the severity of listings in Appendix 1 of the regulations.  (*See* AR at 118.)  But because alcohol abuse precludes a finding of disability, the ALJ scrutinized the connection between her alcohol abuse and her other impairments to determine whether her other impairments would medically equal a listing in Appendix 1 absent her alcohol abuse.  (*See id.* at 118–20.)  He found that they would not.  (*See id.* at 120.)  Subsequently in step four, he concluded, based upon his examination of the evidence and the opinion of a vocational expert, that, absent alcohol abuse, Claimant would be able to perform substantial gainful activity in the

national economy. (*Id.* at 125–27).  As a result, the ALJ concluded that Claimant's alcohol abuse was a contributing factor to the disability determination, and decided that she was not disabled within the meaning of the Act. (*Id.* at 127).  The ALJ's logic is sound, and despite the claimant's contentions, the court finds no legal error.

Moreover, when Claimant argues that the ALJ misconstrued the law, it appears that the claimant is, in reality, alleging that the effects of Claimant's mental impairments cannot be separated from the effects of her alcohol abuse. (*See* Opening Br. at 22.)  The court therefore construes Claimant's allegations that the ALJ misapplied to the law as allegations that the ALJ's conclusions are unsupported by substantial evidence.  Nevertheless, this court finds that substantial evidence supports the ALJ's conclusion that alcohol is a contributing factor to the disability determination.  Drawing chiefly from Claimant's own words, the ALJ painstakingly documented Claimant's symptoms and alcohol intake over time. (*See* AR at 115–16.)  From this evidence alone, the ALJ could reasonably associate certain ailments with alcohol abuse, and identify those other ailments that existed with or without alcohol abuse.  When Claimant reported feelings of worthlessness and severe depression, Claimant also reported that she had been heavily drinking on a daily basis. (*Id.* at 116.)  After not drinking for nine days, Claimant reported that she was overwhelmed by problems she "avoided" while drinking, like her health. (*Id.*)  After three weeks of sobriety, she began to consider taking her medicine for her mental conditions, but still expressed fear of doing so. (*Id.*)  At her next appointment, however, she reported feeling much better; revealed that she had started taking her medications; said she was "glad to be on meds and can notice the difference"; and mentioned that she was even searching for jobs. (*Id.*)  As soon as she started drinking again, however, the depression and poor affect

returned. (*Id.*) She discontinued her medications and reported that she was more depressed. (*Id.*) Then, once again, following another period of sobriety, she reported feeling better, despite not taking her medications. (*Id.*)

The ALJ then considered the opinion evidence from Dr. Buban, a psychological expert; Dr. Malmstrom, a Ph.D; and Dr. Glasco, a state agency psychological expert. (*Id.* at 117.) Dr. Buban noted, in the ALJ's words, "brief periods of sobriety, which demonstrated improvement in the claimant's mood and her overall functioning." (*Id.*) As stated by the ALJ, Dr. Buban concluded that "when the claimant stopped drinking and was compliant with her medication, her mental condition and functioning improved," and that "if the claimant eliminated alcohol, she could return to full-time work and her mood would improve." (*Id.*) The ALJ afforded "great weight" to Dr. Buban's opinion because he believed her opinion was "consistent with the record as a whole." (*Id.*) Dr. Malmstrom reported that Claimant's depression "may be a combination of alcohol abuse and chronic diabetes." (*Id.*) The ALJ assigned significant weight to Dr. Malmstrom's opinion. (*Id.* at 118.) Dr. Glasco opined that "[i]f the claimaint were to stop drinking and were able to return to work, [her] condition would be nonsevere." (*Id.*) The ALJ assigned little weight to Dr. Glasco's opinion, however, because "the opinions of Dr. Malmstrom and Dr. Buban are more consistent with the evidence as a whole." (*Id.*) Thus, despite Claimant's contentions, this is not a case where the ALJ or the psychological experts had trouble disentangling the effects of alcohol abuse from the effects of her mental impairments.

Claimant cites *Salazar* as support for her allegations. (*See* Opening Br. at 20 [citing *Salazar*, 468 F.3d at 623].) In *Salazar*, a court sided with a claimant after finding that the ALJ lacked substantial evidence to deny that claimant's disability benefits on the basis of the

7

claimant's alcohol abuse. *Salazar*, 468 F.3d at 624. But unlike here, the mental condition of that claimant deteriorated dramatically in the absence of alcohol. *Id.* In fact, that claimant's mental condition became so bad during a period of sobriety that she had to be hospitalized. *Id.* In this case, the correlation is just the opposite. Here, according to both expert opinion and the claimant, Claimant improves during periods of sobriety. Even if Claimant is correct that she drinks because of her depression (*see* AR at 21), that fact would not negate the substantive evidence cited by the ALJ that Claimant improves, sometimes quite dramatically, when she abstains from alcohol.

Accordingly, this court concludes that there is substantial evidence to support the ALJ's findings on Claimant's substance abuse.

**2. The Role of Claimant's Obesity in the ALJ's Residual Functional Capacity Analysis**

Claimant also contends that the ALJ did not consider her obesity and its effects when determining her Residual Functional Capacity ("RFC"). (*See* Opening Br. at 26–28.)

Before completing step four of the disability determination, the ALJ must determine the claimant's RFC, which is the most the claimant can do in a work setting on a regular and continuing basis despite the limitations imposed by her impairments. SSR 96-8p, 1996 WL 374184 at *1, 3.[2] When determining the claimant's RFC, the ALJ must consider all the relevant evidence and all of the claimant's medically determinable impairments. *Id.* at *2. Then, in the written decision, the ALJ must explain how the evidence supports each of his or her conclusions. *Id.* at *7. Although the ALJ must cite facts to support each conclusion in the ALJ's RFC

---

[2] An "SSR" is a Social Security Administration ruling. These rulings, which are final opinions and orders published under the authority of the Commissioner of Social Security, are binding on "all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

8

analysis, the ALJ is not required to discuss every bit of evidence. SSR 96-8p, 1996 WL 374184, at *7; *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Obesity is considered a medically determinable impairment, and an ALJ must *consider* it and the complications it can cause when combined with other impairments during the ALJ's RFC analysis, even if it does not rise to the level of a "severe" impairment. SSR 02-1p, 2002 WL 34686281 at *1, 4 (emphasis added).

Here, the ALJ considered Claimant's obesity when determining her RFC. First, the ALJ plainly stated in another section of his written decision that he had considered Claimant's obesity "in assessing other steps of the sequential evaluation process." (AR at 119, 121–25.) He cited SSR 02-1p (AR at 119), which provides ALJ's guidance on how to evaluate obesity and includes a whole paragraph on how to consider obesity in assessing a claimant's RFC. *See* SSR 02-1p, 2002 WL 34686281 at *7. Second, he expressly considered Claimant's obesity and obesity-related impairments and functional limitations in the RFC section of his written decision. He stated that "on physical examination, the claimant was noted to be obese, but was in no acute distress." (AR at 123.) The ALJ also noted Claimant's diabetes and her testimony about the limiting effects of her diabetes. (*Id.* at 122.) He noted the effects of Claimant's sleep apnea and a doctor's recommendation that, to assist with her sleep anpea, she should "keep a lean body mass . . . ." (*Id.* at 123.) He noted her height, weight, body mass index, and attempts to lose weight by exercise. (*Id.* at 124.) He also noted that Dr. Carson's physical examination included an assessment of her physical abilities along with the observation that Claimant is obese. (*Id.*)

From these observations, and the functional limitations recommended by the three doctors who examined Claimant, the ALJ constructed an RFC that included, among other

9

limitations, lifting, carrying, sitting, standing, walking, climbing, stooping, kneeling, crouching, and crawling limitations.  (*See id.* at 121, 124–25.)  Claimant argues the ALJ must expressly state how Claimant's "obesity, sleep apnea, and their results" affected her capacity to work.  (Opening Br. at 28).  But this is not required.  The ALJ need only *consider* the claimant's obesity and "cite facts to support each conclusion in the ALJ's RFC analysis."  SSR 02-1p, 2002 WL 34686281 at *1, 4 (emphasis added); SSR 96-8p, 1996 WL 374184, at *2, 7.  The ALJ need not discuss every bit of evidence.  *Clifton*, 79 F.3d at 1009–10.

Thus, the court finds that the ALJ appropriately considered Claimant's obesity and its effects in his RFC analysis.

### 3. The ALJ's Conclusion that Claimant was Capable of Frequent Handling, Fingering, and Feeling

Next, Claimant argues that the ALJ's RFC analysis did not properly account for Claimant's neuropathy in her hands.  (*See* Opening Br. at 28–30.)  Specifically, she claims that the ALJ's findings that Claimant was capable of "frequent handling, fingering, and feeling" lacks substantial evidence.  (*See id.*)

The ALJ reviewed the record to support his findings on Claimant's digital dexterity.  The record shows that Dr. Carson examined Claimant and noted Claimant's neuropathy in a few fingers across both hands.  As a result, Dr. Carson opined that she could "handle, finger or feel frequently with each hand."  (AR at 124.)  The ALJ properly noted that he assigned "great weight" to Dr. Carson's opinion and accurately communicated these functional limitations to the vocational expert in steps four and five of the disability determination.  (*See id.* at 124, 206 [asking the vocational expert about jobs that might be available for a person who "could frequently handle, finger, and feel . . . ."].)

Claimant also argues that "the claimant's lack of vibratory and light touch sense in both her hands was uncontroverted." (Opening Br. at 29.) This is, however, an inaccurate summary of the evidence. Claimant admits that Dr. Carson's physical exam "demonstrated that vibratory and light touch sense were absent in two fingers on Ms. Reid's right hand, and the thumb and two fingers on Ms. Reid's left hand." (*Id.*) A lack of feeling in parts of each hand is not the same as a "lack of vibratory and light touch sense in *both* hands." Hence, Dr. Carson determined that Claimant could "*frequently* handle, finger, and feel." (AR at 124 [emphasis added].)

The ALJ's finding that Claimant was capable of frequent handling, fingering, and feeling is supported by substantive evidence.

### 4. The ALJ Met the Commissioner's Burden of Proof at Step Five

Finally, Claimant argues that the ALJ failed to meet the Commissioner's burden at step-five of the ALJ's disability determination. (*See* Opening Br. at 30–32.) Specifically, Claimant believes the ALJ failed to properly inquire into discrepancies between the vocational expert's testimony and the guidelines contained in certain authorized publications. (*See id.* at 31–32.) Claimant also believes that the ALJ erred by depending on a vocational expert's experience to conclude that jobs existed for a person like Claimant who had to alternate between sitting, standing, and walking. (*See* Opening Br. at 32.)

When an ALJ consults with a vocational expert, the ALJ is required to inquire on the record about whether the expert's testimony is consistent with the *Dictionary of Occupational Titles* and another authorized publication, *Selected Characteristics of Occupations*. SSR 00-4p, 2000 WL 1898704, at *2. The ALJ is then required to elicit a reasonable explanation for any

"apparent unresolved conflict" between the vocational expert's opinion and the guidelines contained in those publications. *Id.*

Here, the ALJ met his burden and did what was legally required of him. He inquired on the record about whether the vocational expert's opinions differed from the authorized vocational guidelines. (*See* AR at 208 ["Is your testimony today different from information contained in the Dictionary of Occupational Titles?"].) In response, the vocational expert explained, in great detail, how his opinion took into account factors not considered by the guidelines and how he based his opinion on his more than thirty years of experience as a vocational rehabilitation counselor. (*See id.* at 208–09.) The ALJ reasonably relied on this opinion. And, contrary to Claimant's arguments, an ALJ may reasonably rely on the opinion of a vocational expert. *See* SSR 00-4p, 2000 WL 1898704 at *2.

The court concludes that the ALJ properly inquired on the record about any discrepancies between the vocational expert's opinion and the guidelines listed in the authorized publications.

## CONCLUSION

Having considered and rejected all four of Claimant's arguments, the court finds no error warranting reversal.

Accordingly, it is

**ORDERED** that the Commissioner's decision through the Administrative Law Judge is **AFFIRMED.**

Dated this 21st day of August, 2015.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge